## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SOUTH MAIN STREET : No. 3:12cv24
REDEVELOPMENT, LLC, :
          **Plaintiff** : (Judge Munley)
  :
    **v.** :
  :
R/C THEATRES MANAGEMENT LLLP :
and R/C THEATRES MANAGEMENT :
CORPORATION, :
          **Defendants** :
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

      This case arises from a dispute over the apportionment of real estate taxes between a commercial landlord and tenant under the applicable terms of their lease.  The commercial landlord in this case, Plaintiff South Main Street Redevelopment, LLC (hereinafter "SMSR"), and the commercial tenants, Defendant R/C Theatres Management LLP and Defendant R/C Theatres Management Corporation (collectively hereinafter "R/C Theaters"), filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Docs. 20, 27).  Each party maintains that no genuine issues of material fact exist and that summary judgment is appropriate.  The parties' respective motions are briefed and ripe for disposition.  For the following reasons, SMSR's motion will be denied, R/C Theatres' motion will be granted and the court will grant judgment in R/C Theatres' favor.

**BACKGROUND**

SMSR owns property located on the corner of South Main and East Northampton Streets in the City of Wilkes-Barre, Pennsylvania (hereinafter the "property" or the "Mixed Use Development"). (Doc. 21, Defs.' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (hereinafter "Defs.' SOF") ¶ 1; Doc. 28, Statement of Undisputed Material Facts of Pl., South Main Street Redevelopment, LLC (hereinafter "Pl.'s SOF") ¶ 1). The property is improved with a commercial complex colloquially called the "University Corners," which consists of a movie theater, thirteen other commercial units and an associated parking garage. (Defs.' SOF ¶ 1; Pl.'s SOF ¶ 2). R/C Theatres, the commercial tenants in this case, own and operate movie theater complexes in several states. (Defs.' SOF ¶¶ 5-6). The undisputed material facts, as presented by both parties, are as follows.

**The Property's KOZ Designation**

Some time prior to August 31, 2004, the Pennsylvania Department of Community and Economic Development (hereinafter "DCED") designated the property as a Keystone Opportunity Zone (hereinafter "KOZ"). (Defs.' SOF ¶ 20; Pl.'s SOF ¶ 4). Due to its designation as a KOZ, the property was not subject to certain local real estate taxes. (Id.) In particular, the KOZ designation fully abated real estate taxes assessed on the property by (1) the City of Wilkes-Barre, (2) Luzerne County and (3) the Wilkes-Barre Area

School District.[1]  (Id.)  The property's KOZ status was originally scheduled to expire on December 31, 2010.  (Defs.' SOF ¶ 21).

**The Lease**

On August 31, 2004, SMSR and R/C Theatres entered into a lease agreement in which R/C Theatres agreed to lease a portion of the property for use as a movie theater complex (hereinafter the "leased premises").  (Id. ¶ 7; Pl.'s SOF ¶ 3; Doc. 24, Ex. F, Lease (hereinafter "Lease")).  Article VI of the lease addresses each party's responsibility with respect to the payment of taxes.  (See Defs.' SOF ¶ 8; Pl.'s SOF ¶ 58; Lease art. VI).  Article VI, paragraph 1 governs how the property's KOZ status affects the parties' tax obligations through December 31, 2010, and this provision also requires R/C Theatres to pay SMSR a percentage of any tax savings realized through future KOZ extensions.[2]  Article VI, paragraph 2 sets forth the formula by

---

[1] A parcel that receives KOZ benefits is taxable until the county tax assessment office receives a letter from the DCED certifying that the property is entitled to receive KOZ benefits. (Pl.'s SOF ¶ 37).  The KOZ benefits provided to a parcel take the form of an abatement of the real estate taxes. (Id. ¶ 38).  KOZ benefits are not automatically renewed, and a parcel must qualify for KOZ benefits every year.  (Id. ¶ 40).

[2] Article VI, paragraph 1 of the lease states:

As the Demised Premises shall be located in a Keystone Opportunity Zone (the "KOZ"), Tenant shall not be obligated to pay any real estate or personal property taxes, amusement tax, mercantile/business privilege tax, Pennsylvania State corporate tax, or capital franchise tax during the Lease Term through December 31, 2010, unless and to the extent the benefits of the KOZ are terminated by the Commonwealth.  If Landlord is successful in extending the benefits of the KOZ beyond December

3

which R/C Theatres' pro rata real estate tax payment to SMSR is calculated.[3]

_____

> 31, 2010, Tenant shall pay to Landlord, annually within sixty (60)
> days after the end of each calendar year after January 1, 2011, an
> amount equal to twenty-five percent (25%) of the tax savings to
> Tenant, determined by multiplying the amount of tax that Tenant
> would have otherwise paid, but for the KOZ, by twenty-five percent
> (25%). Tenant shall cooperate with Landlord in all respects,
> including, without limitation, providing sales reports and other
> information, and permitting Landlord the right to audit Tenant's
> books and records, to assist Landlord in determining the amount
> of tax that would have otherwise been due.

(Lease art. VI, ¶ 1).

> [3] Article VI, paragraph 1 of the lease states:

> After such time as any real estate taxes or assessments ("Taxes")
> become payable, Tenant shall pay its Pro Rata Share (defined
> below) of Taxes to Landlord within sixty (60) days after submission
> of a bill therefor to Tenant. "Taxes" shall include such taxes as
> are general or special, ordinary or extraordinary. In addition, real
> estate taxes shall include any tax or imposition on the value of this
> Lease or upon the rents, if the same is imposed in lieu of or in
> addition to real estate taxes. Taxes shall also include Landlord's
> cost to contest any taxes or assessments upon the Demised
> Premises or Mixed Use Development, or the land upon which the
> same is located. For the purpose of this Lease, Tenant's Pro Rata
> Share shall be [a] fraction, the numerator of which is the LFA in
> the Demised Premises, and the denominator is the gross leasable
> area of all space in the Mixed Use Development. Landlord shall
> furnish Tenant with written notice ("Tax Notice") of the amount of
> Tenant's share of Taxes promptly after receipt by Landlord of the
> tax bill for each tax year. Payments required pursuant to this
> Section 6.2 shall be made within sixty (60) days after the receipt of
> the Tax Notice without interest or penalty; provided, however, in
> no event shall Tenant be required to pay such Taxes prior to
> fifteen (15) days before the same are due and payable by
> Landlord, and further provided that Landlord shall be solely

4

On June 22, 2006, SMSR and R/C Theatres entered into a lease modification agreement, which addressed the definition of Leasable Floor Area ("LFA") under the lease. (Defs.' SOF ¶ 11; Pl.'s SOF ¶ 28). In relevant part, the lease modification provides:

> 1. The "Leasable Floor Area" as set forth in Article III, Paragraph 3.9 of the Lease shall mean: "56,630 square feet of space including the following spaces, all measured from the outside of the exterior walls: first floor lobby, first floor Theatre storage and office space, entire second floor and the elevator serving the first and second floor of the Theatre; specifically excluding any mezzanine space and any stairwells and elevators serving the mezzanine space and excluding all vertical transportation area (as defined in Exhibit "C")."

(Doc. 24-1, Ex. G, Lease Modification Agreement). The leasable area for the entire Mixed Use Development consists of 85,475 square feet. (Defs.' SOF ¶ 12; Pl.'s SOF ¶ 28).

Thus, pursuant to the formula set forth in article VI paragraph 2 of the lease, R/C Theatres' pro rata share is 56,630/85,475 or 66.25%. (Defs.' SOF ¶ 13; Pl.'s SOF ¶¶ 30, 59). Accordingly, 66.25% is the percentage used to calculate the real estate tax payments R/C Theatres must make to SMSR

_____

> responsible for any interest or penalty assessed due to late payment of such tax unless the Tax Notice is given to Tenant at least sixty (60) days prior to the date such Taxes are due and Tenant fails to pay its pro rata share. If in any tax year during the Lease Term and any Renewal Lease Term, Landlord receives a discount for early payment of Taxes or a refund or reduction of all or a portion of the Taxes, the discount, refund and/or reduction shall be passed on to Tenant reducing the amount which Tenant is obligated to pay pursuant to this Section 6.2 so long as Tenant has timely paid Taxes.

(Lease art. VI, ¶ 2) (emphasis in original).

under the lease.  (Defs.' SOF ¶ 14; Pl.'s SOF ¶ 29).

**Original 2011 Real Estate Tax Bills**

As the parties anticipated when they entered into the lease, the property's KOZ status expired on December 31, 2010 and local real estate taxes were assessed against the property for the 2011 calendar year.  (Defs.' SOF ¶¶ 21, 29-30; Pl.'s SOF ¶¶ 5-6, 10-16).  On February 1, 2011, the City of Wilkes-Barre issued a real estate tax bill to SMSR for the entire Mixed Use Development in the face amount of $120,014.46.  (Defs.' SOF ¶ 54; Pl.'s SOF ¶¶ 10, 56; Doc. 26-1, Ex. Q, 2011 City Tax Bill dated 2/1/11 (hereinafter "Original City Bill")).  The 2011 city taxes were based on an assessed value of the entire Mixed Use Development of $1,242,000.00 as determined by the City of Wilkes-Barre.  (Original City Bill).

On March 13, 2011, Luzerne County issued a real estate tax bill to SMSR for the entire Mixed Use Development in the face amount of $56,981.18.  (Pl.'s SOF ¶ 11; Doc. 1-1, Compl., Ex. B, 2011 County Tax Bill dated 3/13/11(hereinafter "Original County Bill")).  The 2011 county taxes were based on an assessed value of the entire Mixed Use Development of $10,926,400.00 as determined by the Luzerne County Board of Assessments and Appeals (hereinafter the "Board").  (Id.)

On July 16, 2011, Berkheimer Tax Administrator, the appointed tax administrator for the Wilkes-Barre Area School District, issued a real estate tax bill to SMSR for the entire Mixed Use Development in the face amount of $167,921.29.  (Defs.' SOF ¶¶ 42, 46; Pl.'s SOF ¶ 12; Doc. 25-5, Ex. O, 2011

School Tax Bill dated 7/16/11 (hereinafter "Original School Bill")).  The 2011 school taxes were based on an assessed value of the entire Mixed Use Development of $10,926,400.00 as determined by the Board.[4]  (Pl.'s SOF ¶ 12; Original School Bill).  Accordingly, the real estate taxes initially issued with respect to the Mixed Use Development totaled $344,916.93.

### The Subdivision and Reassessment of the Property

At the time the lease was executed, the property was one undivided parcel, identified in Luzerne County tax records as parcel number 73-H9SE2-024-000.[5]  (Defs.' SOF ¶ 16).  Subsequent to the execution of the lease, SMSR subdivided the property into fourteen condominium commercial units.  (Id. ¶ 17).  These fourteen units were identified with the following parcel numbers: 73-H9SE2-024-001-101; 73-H9SE2-024-001-102; 73-H9SE2-024-001-103; 73-H9SE2-024-001-104; 73-H9SE2-024-001-105; 73-H9SE2-024-001-106; 73-H9SE2-024-001-107; 73-H9SE2-024-001-108; 73-H9SE2-024-001-109; 73-H9SE2-024-001-110; 73-H9SE2-024-001-111; 73-H9SE2-024-

---

[4] The Wilkes-Barre Area School District relies on Luzerne County to determine the appropriate value for properties subject to School Taxes. (Defs.' SOF ¶ 43).  The School District, through Berkheimer Tax Administrators, further relies upon Luzerne County to determine whether a particular property is tax exempt or subject to an abatement through the KOZ Program.  (Id. ¶ 44).  Thus, real estate tax abatements recognized by Luzerne County are applied to both county taxes and school taxes.  (Id. ¶ 45).

[5] The court notes that the City of Wilkes-Barre uses a separate identification system from that of Luzerne County, but, for simplicity's sake, the court will refer only to Luzerne County parcel identification numbers.

001-112; 73-H9SE2-024-001-113; and 73-H9SE2-024-001-114.[6] (Id.; Doc. 24-2, Ex. H, Pl.'s Response to Request for Interrogatories at 8). As a result of the subdivision, the leased premises is now identified as Parcel Number 73-H9SE2-024-001-101.[7] (Defs.' SOF ¶ 18).

Nearly one month after the initiation of this lawsuit, on February 9, 2012, the Board reassessed the property. (Id. ¶ 34; Pl.'s SOF ¶ 15; Doc. 25-2, Ex. L, Change of Assessment Notice dated 2/9/12 (hereinafter "2/19/12 Notice")). When it reassessed the property, the Board assessed each commercial unit separately, as opposed to providing one assessment for the entire property, as had been the previous practice. (Pl.'s SOF ¶¶ 15-16; 2/9/12 Notice). The change of assessment notices applied retroactively to the 2011 calendar year. (Defs.' SOF ¶ 35).

**The Property's KOZ Status in 2011**

In 2008, the Pennsylvania Legislature amended the KOZ statute to allow for the extension of KOZ benefits to commercial parcels that were not occupied as of the effective date of the KOZ amendment. See 73 PA. CONS. STAT. ANN. 820.301c. Pursuant to this change in the KOZ statute, the Greater

---

[6] The fourteen parcels identified as constituting the Mixed Use Development do not include the parking garage associated with the property. (Doc. 24-2, Ex. H, Pl.'s Response to Request for Interrogatories at 8; Doc. 22-2, Ex. C, Dep. of William Geary at 25). After SMSR subdivided the property, the parking garage was assigned the property's former parcel number (73-H9SE2-024-000). (Id.)

[7] For ease of identification, each parcel will hereinafter be referred to by its last three digits (e.g. Parcel 73-H9SE2-024-001-101 will be referred to as Parcel 101).

Wilkes-Barre Development Corporation, on behalf of SMSR, sent an application to DCED for the extension of the KOZ status for those portions of the property that remained unoccupied on the statute's effective date. (Defs.' SOF ¶ 22; Pl.'s SOF ¶ 8). Submitted some time after December 31, 2010, this appliaction sought to secure KOZ status for Parcels 102, 103, 104, 105, 106, 107, 108, 109, 110 and 113 (hereinafter the "KOZ Parcels") for the 2011 tax year. (Defs.' SOF ¶ 22).

In a letter dated May 25, 2011, the DCED approved the application and extended the tax exempt status for the KOZ Parcels. (Id. ¶ 23; Pl.'s SOF ¶ 22; Doc. 25, Ex. J, DECD Letter dated 5/25/11). As a result of the DCED's approval of SMSR's application, the real estate taxes for the KOZ Parcels were abated for the 2011 tax year. (Defs.' SOF ¶ 24; Pl.'s SOF ¶¶ 8-9, 24-25). When SMSR received the May 25, 2011 letter from DCED it understood that real estate taxes would only have to be paid with respect to Parcels 101, 111 and 114 (hereinafter the "non-KOZ Parcels") and that no real estate taxes were payable with respect to the KOZ Parcels. (Defs.' SOF ¶¶ 25-28; Pl.'s SOF ¶ 23).

### Revised 2011 Real Estate Tax Bills

SMSR notified the City of Wilkes-Barre of the tax exempt status of the KOZ Parcels, and the city issued SMSR a notice of abatement. (Defs.' SOF ¶ 55; Pl.'s SOF ¶ 25; Doc. 24-3, Ex. I, Dep. of Joann Kittrick at Ex. 1). Subsequently, the City of Wilkes-Barre issued separate tax bills for the three non-KOZ Parcels. (Defs.' SOF ¶ 56; Pl.'s SOF ¶¶ 19-20; Doc. 26-2, Ex. R,

Revised 2011 City Tax Bills (hereinafter "Revised City Bills")).  The non-KOZ Parcels were issued a city tax bill for the collective face amount of $69,412.23, and this real estate tax was based on the three parcels' total assessed value of $718,330.00, as determined by the City of Wilkes-Barre. (Pl.'s SOF ¶ 19; Revised City Bills).  The revised city tax bills supersede the original bill issued on February 1, 2011, and the revised bills reflect the real estate tax abatement for the KOZ Parcels.  (Defs.' SOF ¶ 56; Pl.'s SOF ¶ 21).

Similarly, Luzerne County was notified of the DCED's May 25, 2011 letter extending the KOZ status for portions of the property.  (Pl.'s SOF ¶ 24). On May 1, 2012, Luzerne County issued fourteen supplemental tax bills for each of the parcels comprising the property.  (Defs.' SOF ¶ 36; Pl.'s SOF ¶ 18; Doc. 25-3, Ex. M, Revised 2011 County Tax Bills dated 5/1/12 (hereinafter "Revised County Bills")).  The supplemental county tax bills were consistent with the February 9, 2012 change of assessment notice with respect to the base property value applied to each unit of the Mixed Use Development. (Compare 2/9/12 Notice, with Revised County Bills).  The May 1, 2011 supplemental county tax bills contained a cumulative face amount of $55,890.21.  (Pl.'s SOF ¶ 53; Revised County Bills).  The supplemental county tax bills replaced the original 2011 county tax bill issued on March 13, 2011.[8]  (Defs.' SOF ¶ 37).  The supplemental county tax bills for the non-KOZ

_____

[8] The court notes that the total face amount for the fourteen supplemental county tax bills issued on May 1, 2012 is approximately $1,000 less than the face amount of the original 2011 county tax bill issued on March 13, 2011.  (Compare Original County Bill, with Revised County Bills).

10

Parcels contained a combined face amount of $42,844.35. (Defs.' SOF ¶ 38; Revised County Bills). The 2011 county taxes attributable to the KOZ Parcels were abated at the end of the year, and SMSR was only liable for the amount assessed against the non-KOZ Parcels. (Defs.' SOF ¶¶ 39-40).

Luzerne County also issued supplemental real estate tax bills on behalf of the Wilkes-Barre Area School District on May 1, 2012. (Defs.' SOF ¶ 47; Pl.'s SOF ¶ 18; Doc. 26, Ex. P, Revised 2011 School Tax Bills dated 5/1/12 (hereinafter "Revised School Bills")). Like the supplemental county tax bills, Luzerne County issued separate supplemental school tax bills with respect to each of the fourteen parcels comprising the Mixed Use Development. (Defs.' SOF ¶¶ 47; Revised School Bills). The supplemental school tax bills also incorporated the real estate assessments contained in the February 9, 2012 change of assessment notice. (Defs.' SOF ¶ 48). The supplemental school tax bills issued on May 1, 2012 had a total face amount of $82,353.10 for the fourteen commercial units of the Mixed Use Development.[9] (Pl.'s SOF ¶ 54; Revised School Bills). The school taxes for the KOZ Parcels were abated, and SMSR is not liable for the 2011 school taxes issued for these parcels. (Defs.' SOF ¶¶ 50-51). As such, with respect to the May 1, 2012 supplemental school tax bills, SMSR is only liable for $63,115.31–the amount

---

[9] The May 1, 2012 supplemental school tax bills were issued for the prorated six month period from January 1, 2011 to June 30, 2011. (Defs.' SOF ¶ 49; Pl.'s SOF ¶ 54). Thus, at the current millage rate and property values, the fourteen parcels of the Mixed Use Development would have a school tax face amount of $164,706.20 for a full tax year. (Pl.'s SOF ¶ 55).

assessed against the non-KOZ Parcels.[10]  (See Revised School Bills).

Accordingly, after the city, county and school taxes were revised to comport with the 2011 KOZ extensions and the February 2, 2012 reassessment by the Board, SMSR is liable for a total of $238,517.20 in real estate taxes for the 2011 tax year.

### SMSR's Demand for Payment Under Article VI of the Lease

On July 18, 2011, SMSR first provided R/C Theatres with written notice of the original February 1, 2011 city tax bill.  (Defs.' SOF ¶ 61; Pl.'s SOF ¶ 44).  In this notice, William Geary, a managing member of SMSR,[11] informed R/C Theatres that their pro rata share of the city taxes was 66.3% of $120,014.46 or approximately $79,569.58.  (Doc. 22-2, Ex. C, Dep. of William Geary (hereinafter "Geary Dep") at Ex. 8).  Despite the fact that the city tax bill was in the penalty phase on July 18, 2011 and had increased to $138,016.63, Geary used the face value amount of $120,014.46 when calculating R/C Theatres' pro rata share. (Defs.' SOF ¶¶ 64-65; Original City Bill).

On July 22, 2011, SMSR first provided R/C Theatres with written notice of the original July 16, 2011 school tax bill issued by Berkheimer Tax

---

[10] At the current millage rate and property values, the non-KOZ Parcels of the Mixed Use Development would have a combined school tax face amount of $126,230.62 for a full school year.  (See Pl.'s SOF ¶ 55; Revised School Bills).

[11] William Geary resides in California, and, as a managing member of SMSR, he is ultimately responsible for addressing the tax issues between SMSR and any taxing authorities regarding the Mixed Use Development. (Defs.' SOF ¶¶ 2-4).

Administrators.  (Defs.' SOF ¶ 62; Pl.'s SOF ¶ 45).  Geary informed R/C Theatres that their pro rata share of the school tax bill was 66.3% of $164,563 or approximately $109,105.  (Geary Dep. at Ex. 9).   In calculating the pro rata share of the school taxes, Geary used the early payment discount tax value of $164,562.86 and not the face amount of $167,921.29.  (See id.; Original School Bill).

On August 2, 2011, SMSR first provided R/C Theatres with written notice of the original March 13, 2011 county tax bill.  (Defs.' SOF ¶ 63; Pl.'s SOF ¶ 46).  Geary informed R/C Theatres that their pro rata share of the county taxes was 66.3% of $56,981.18 or approximately $37,756.  (Geary Dep. at Ex. 10).  Despite the fact that the county tax bill was in the penalty phase on August 2, 2011 and had increased to $62,679.30, Geary used the face amount of $56,981.18 when calculating R/C Theatres' pro rata share. (Defs.' SOF ¶¶ 64-65; Original County Bill).

On or about August 2, 2011, SMSR informed R/C Theatres that they had sixty (60) days to pay their pro rata share of the original city, county and school tax bills, which Mr. Geary calculated to be $226,430.58.  (Pl.'s SOF ¶ 47; Geary Dep. at Exs. 8-10).  SMSR understood in August 2011 that it was not going to have to pay the original total face amount of $344,916.96 because of the KOZ status of portions of the property.  (Defs.' SOF ¶ 33).

After receiving the original 2011 city, county and school tax bills, R/C Theatres advised SMSR that they disputed the amount of the pro rata share as calculated by SMSR.  (Pl.'s SOF ¶ 48).  Specifically, R/C Theatres asserts

13

that the 2011 city, county and school tax bills SMSR relied upon to calculate R/C Theatres' pro rata share should be reduced by the KOZ abatements extended to the property. (Defs.' SOF ¶ 67; Geary Dep. at Exs. 11, 13, 16). On several occasions in mid to late 2011, R/C Theatres requested information regarding KOZ extensions for the property. (Defs.' SOF ¶ 66). SMSR refused to provide information regarding KOZ extensions because it believed this information to be "irrelevant to the payment of property taxes." (Doc. 26-3, Ex. S, Letter from Geary to Cohen dated 11/4/11).

R/C Theatres did not submit a real estate tax payment to SMSR by October 1, 2011, and, on November 1, 2011, SMSR forwarded a written default notice to R/C Theatres in which SMSR demanded a real estate tax payment of $227,736.40 by November 30, 2011. (Pl.'s SOF ¶¶ 49-51; Doc. 1-1, Compl. at Ex. D, Default Notice dated 11/1/11). Moreover, in a November 4, 2011 letter to Scott Cohen, the CEO and President of R/C Theatres, Mr. Geary demanded that R/C Theatres pay SMSR an additional $29,586.17 in late payment penalties. (Doc. 26-3, Ex. S, Letter from Geary to Cohen dated 11/4/11).

On November 22, 2011, R/C Theatres notified SMSR that they intended to contest SMSR's claim of default pursuant to Article XVIII, paragraph 1 of the lease.[12] (Defs.' SOF ¶ 70). In their November 22, 2011 letter, R/C

---

[12] Article XVIII, paragraph 1 of the lease provides that "Tenant shall have the right to 'contest' a claim of default by Landlord and request that such issue shall be subject to judicial interpretation and/or arbitration before Tenant is required to commence a cure." (Lease art. XVIII, ¶ 1).

Theatres explained their position that the real estate tax notices prepared by SMSR were inflated, and R/C Theatres stated that they are "prepared to pay [their] pro rata share of the taxes that South Main is required to pay." (Doc. 26-4, Ex. T, Letter from Winfield to MacNeely dated 11/22/11). R/C Theatres did not pay the real estate taxes by November 30, 2011 as requested in the default notice. (Pl.'s SOF ¶ 52).

### Procedural History

SMSR filed a complaint against R/C Theatres in the Luzerne County Court of Common Pleas on December 8, 2011. (Doc. 1-1, Compl.). In its complaint SMSR advanced two counts: count I seeks money damages pursuant to a theory of breach of lease and count II petitions the court for a declaration that all future real estate tax payments owed by R/C Theatres will be calculated pursuant to the formula advanced by SMSR. (Id.)

On January 5, 2012, R/C Theatres removed the case to this court. (Doc. 1, Notice of Removal). On January 6, 2012, R/C Theatres filed an answer with counterclaims, in which R/C Theatres also seeks a declaratory judgment pursuant to 23 U.S.C. § 2201. (Doc. 2, Answer). The court held a case management conference on February 6, 2012, after which the parties initiated discovery. (Doc. 10, Case Management Order). The parties filed timely cross-motions for summary judgment on October 1, 2012. (Docs. 20, 27). The issues are fully briefed, bringing this case to its current posture.

**JURISDICTION**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Plaintiff South Main Street Redevelopment, LLC is a Pennsylvania limited liability company. (Defs.' SOF ¶ 1). SMSR's managing member, William W. Geary Jr., is a citizen of California, and none of its members are citizens of Maryland, North Carolina or Virginia. (Id. ¶ 2; Doc. 1, Notice of Removal ¶ 7). Defendant R/C Theatres Management LLLP is a Maryland limited liability limited partnership with a principal place of business in Reistertown, Maryland. (Defs.' SOF ¶ 5). Defendant R/C Theatres Management LLLP's partners are citizens of either Maryland, North Carolina or Virginia. (Doc. 1, Notice of Removal ¶¶ 9-10). Defendant R/C Theatres Management Corporation is a Maryland corporation with a principal place of business in Reistertown, Maryland. (Defs.' SOF ¶ 5). Because complete diversity of citizenship exists among the parties and the amount in controversy exceed $75,000.00, the court has jurisdiction over this case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**LEGAL STANDARD**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" See Knabe v. Boury Corp., 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)).

"[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248. A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories demonstrating a genuine issue for trial. Id. at 324; see also Goode v. Nash, 241 F. App'x 868, 869 (3d Cir. 2007) ("[A]lthough the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving

party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum, or oral argument.'" (quoting Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006))).

Ordinarily, the interpretation of a contract is a legal question for the court and may be decided on summary judgment when the contractual language is subject to only one reasonable interpretation. See IBEW Local Union No. 102 v. Star-Lo Elec., Inc., 444 F. App'x 603, 607 (3d Cir. 2011); see also Allied Erecting & Dismantling, Co. v. USX Corp., 249 F.3d 191, 201 (3d Cir. 2001) (noting that where the meaning of the terms of a contract are "'unambiguous and can be interpreted only one way, the court interprets the contract as a matter of law.'" (quoting Pacitti v. Macy's, 193 F.3d 766, 773 (3d Cir. 1999))). Although, if the contract terms at issue are ambiguous, "'then the interpretation of that term is a question of fact for the trier of fact to resolve in light of the extrinsic evidence offered by the parties in support of their respective interpretations.'" Star-Lo Elec., Inc., 444 F. App'x at 607 (quoting Sanford Inv. Co. v. Ahlstorm Mach. Holdings, Inc., 198 F.3d 415, 420-21 (3d Cir. 1999)).

**DISCUSSION**

SMSR and R/C Theatres agree on much in their cross-motions for summary judgment. The parties agree that the lease agreement executed on August 31, 2004 is valid and enforceable. The parties agree that R/C Theatres is obligated to make real estate tax payments to SMSR pursuant to

Article VI of the lease.  The parties further agree that R/C Theatres' liability for any real estate taxes is equivalent to their "Pro Rata Share," which is computed under Article VI by taking 66.25% of SMSR's "real estate taxes or assessments."

The parties dispute, however, the figure that will be used to determine R/C Theatres' pro rata share, or in other words, the parties cannot agree on the number that represents SMSR's "real estate taxes or assessments."  For the 2011 tax year, SMSR argues that this figure should be $343,825.96 (the amount assessed against the KOZ and non-KOZ Parcels), while R/C Theatres asserts that it should be $238,517.20 (the amount actually due on the non-KOZ Parcels).  After careful review, the court agrees with R/C Theatres' interpretation of the lease and the court will grant R/C Theatres' motion for summary judgment.

**A.  The Interpretation of Article VI of the Lease**

The clear and unambiguous terms of Article VI, paragraph 2 of the lease provide that R/C Theatres' pro rata share shall consist of 66.25% of then real estate taxes and assessments that are payable by SMSR.  The court will accordingly issue a declaratory judgment in favor of R/C Theatres with respect to the future interpretation and payment of real estate taxes under Article VI of the lease.

Under Pennsylvania law, "a lease is in the nature of a contract and is controlled by principles of contract law."  T.W. Phillips Gas & Oil Co. v.

19

Jedlicka, 42 A.3d 261, 267 (Pa. 2012) (citing Willison v. Consol. Coal Co., 637 A.2d 979, 982 (Pa. 1994)).  Pennsylvania courts will first look to the language of a contract when attempting to determine the parties' intent, "and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement.  Steuart v. McChesney, 444 A.2d 659, 661 (Pa. 1982); see also Crawford Cent. Sch. Dist. v. Commonwealth, 888 A.2d 616, 623 (Pa. 2005) (noting that "[w]hen contractual language is clear and unequivocal, its meaning must be determined by its contents alone."); Seven Springs Farm, Inc. v. Croker, 748 A.2d 740, 750 (Pa. Super. Ct. 2000) ("In the absence of technical terminology, words of a contract are to be construed according to their plain and ordinary meaning.").  It is not the function of the court to alter parties' agreement, or rewrite what has been agreed to.  See Nw. Savings Bank & Fin. Servs. v. NS First Street LLC, 802 F. Supp. 2d 580, 588 (M.D. Pa. 2011) (quoting Steuart, 444 A.2d at 661-62); see also Willison, 637 A.2d at 982 ("The accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, determines the construction to be given [to] the agreement.").

When courts interpret contract provisions, the instrument as a whole must be considered.  See Robert F. Felte, Inc. v. White, 302 A.2d 347, 351

(Pa. 1973).  Moreover, courts do not assume that a contract's language was chosen carelessly, or that the parties were ignorant of the meaning of the language employed.  See Steuart, 444 A.2d at 662.

The relevant provisions of the lease governing the instant dispute are found in Article VI, paragraph 2 (hereinafter "Article 6.2").  The meaning of this lease provision is clear and unequivocal–R/C Theatres' Pro Rata Share consists of a percentage (66.25%) of the real estate taxes and assessments that SMSR must pay on the entire Mixed Use Development.  The court's holding in this matter became evident upon the examination of several specific lease provisions.

The court first finds that the use of the words "become payable" in the first sentence of Article 6.2 is indicative of the parties' intent for R/C Theatres to be obligated to pay a share of those taxes that SMSR actually owes to taxing authorities.  This provision provides in pertinent part that "[a]fter such time as any real estate taxes or assessments ("Taxes") **become payable**, Tenant shall pay its Pro Rata Share . . . ."  (Lease art. VI, ¶ 2) (emphasis added).  The selection of the word "payable" to serve as the condition precedent to trigger R/C Theatres' obligation to pay real estate taxes was no accident.  "Payable" is defined as that which "is to be paid," BLACK'S LAW

21

DICTIONARY (9th ed. 2009), or phrased slightly differently, it is that which "may, can or must be paid," MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1999).  The use of the word "payable" in the lease as the triggering mechanism illustrates that the parties envisioned that R/C Theatres' real estate tax obligation under the lease would coincide with SMSR's liability to local taxing authorities.  In other words, the phrase "become payable" in the first sentence of Article 6.2 evidences a deliberate scheme by the parties to link R/C Theatres' tax obligations to SMSR's actual tax liabilities.

Moreover, the parties' intent that R/C Theatres only pay a share of the real estate taxes actually payable by SMSR is exhibited by the use of the phrase "Pro Rata Share" to describe R/C Theatres tax liability.  "Pro rata" is defined as "[p]roportionateley, according to an exact rate, measure, or interest."  BLACK'S LAW DICTIONARY (9th ed. 2009).  Another source similarly defines "pro rata" as "proportionately, according to an exactly calculable factor (as a share or liability)."  MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1999).  "Share" is defined as "[a]n alloted portion owned by, contributed by, or due to someone."  BLACK'S LAW DICTIONARY (9th ed. 2009).  The use of the words "Pro Rata Share" to describe R/C Theatres' tax obligation indicates that R/C Theatres is paying a proportionate allotment of whatever must be

paid by SMSR for the Mixed Use Development as a whole.

The timing mechanisms in Article 6.2 similarly support a finding that R/C

Theatres' tax obligations are linked to SMSR's actual tax liability. The

pertinent timing mechanisms provide as follows:

> Payments required pursuant to this <u>Section 6.2</u> shall be made
> within sixty (60) days after the receipt of the Tax Notice without
> interest or penalty; provided, however, **in no event shall Tenant
> be required to pay such Taxes prior to fifteen (15) days before
> the same are due and payable by Landlord**, and further
> provided that Landlord shall be solely responsible for any interest
> or penalty assessed due to late payment of such tax **unless the
> Tax Notice is given to Tenant at least sixty (60) days prior to
> the sate such Taxes are due** and Tenant fails to pay its pro rata
> share.

(Lease art. VI, ¶ 2) (emphasis added). In other words, the timing provisions of

Article VI provide that R/C Theatres' duty to pay taxes, penalty fees, and /or

interest charges is tied directly to SMSR's responsibility to make payments to

taxing authorities. These provisions would make little sense if the lease

somehow obligated R/C Theatres to pay real estate taxes on invalid or

uncollectible invoices.[13]

---

[13] The bills SMSR used to calculate R/C Theatres' pro rata share
contained amounts that were not payable by SMSR; thus, rendering
application of the timing mechanisms in Article 6.2 impossible. Furthermore,
Geary's demand for interest and penalty fees is puzzling in light of the fact
that the timing mechanisms of Article 6.2 cannot apply unless SMSR actually
owes taxes.

The court also finds that the plain language of the final sentence of Article 6.2 conveys the parties' intent that R/C Theatres pay a percentage of the real estate taxes actually owed. This provision provides that "[i]f in any tax year . . . Landlord receives a discount for early payment of Taxes or a refund or reduction of all or a portion of the Taxes, **the discount, refund and/or reduction shall be passed on to Tenant reducing the amount which Tenant is obligated to pay** pursuant to this <u>Section 6.2</u> so long as Tenant has timely paid Taxes. (Lease art. VI, ¶ 2) (emphasis added). This clause makes clear that the intent of the parties was for R/C Theatres' pro rata share to be based upon what SMSR must ultimately pay. KOZ tax abatements qualify, under the broad language of Article 6.2 as a "discount, refund and/or reduction" that must be passed onto R/C Theatres.[14] As is evidenced by

_____

[14] In their briefs, SMSR focuses on the fact that the KOZ program is an abatement program. SMSR argues, with respect to the last sentence of Article 6.2, that SMSR is not obligated to pass on any "abatements" to R/C Theatres because it is only obligated to pass on a "discount, refund and/or reduction." The court finds SMSR's argument on this point unconvincing. A review of the plain meaning of "abatement" demonstrates that it is, if anything, a "reduction." See MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1999) (defining "abatement" as "1: the act or process of abating : the state of being abated . . . a deduction from the full amount of a tax," and defining "abate" in part as "2 . . . b: to reduce in value or amount : make less esp. by way of relief"); WEBSTER'S COLLEGIATE THESAURUS (1988) (identifying the following synonyms for abatement: "discount, rebate, reduction, subtraction"). Thus, the court does not accept SMSR's assertion that an abatement is

Article VI, paragraph 1, (hereinafter "Article 6.1") the parties were aware that the property's real estate taxes were to be reduced by virtue of the KOZ program; thus, if the parties intended to exclude abatements for subdivided units of the property from inclusion as a "discount, refund and/or reduction," then they would have stated as much in the lease.[15]

SMSR presents a strained and confusing argument in support of its position that R/C Theatres must pay a pro rata share of all taxes assessed against the property, whether those taxes are payable or uncollectible. SMSR's argument centers on the placement of "become payable" before the term "Taxes." SMSR specifically avers as follows:

> [B]y appearing after the term "Taxes", the phrase "become payable" merely serves as a triggering mechanism for when the Theatre's obligation to pay its pro rata share of the "Taxes" commences. Only after the "Taxes" become payable does the

_____

somehow not a reduction for the purposes of the lease provisions in dispute.

[15] The court disagrees with SMSR's contention that the parties intended for Article 6.1 to be the only Article to deal with KOZ abatements while Article 6.2 was intended to involve all other reductions. Rather, the court finds that a plain language reading of Article 6.1 reveals that it was intended to incentivize the landlord to seek KOZ extensions as well as to compensate the landlord for KOZ extensions achieved. In reaching this conclusion, the court first notes that the word "abatement" is mentioned in neither Articles 6.1 or 6.2 while discounts, refunds and/or reductions are covered in Article 6.2. Moreover, the fact that the parties endeavored to create such an incentive structure further indicates that the parties intended for KOZ benefits (partial or otherwise) to be passed on to R/C Theatres.

> Theatre have a duty to pay its pro rata share of such "Taxes".
> Thus, the phrase "become payable" addresses an issue (i.e. the
> commencement of the Theatre's obligation to pay its pro rata
> share of the "Taxes") that is completely distinct from what real
> estate taxes are actually in the term "Taxes".

(Doc. 37, Pl.'s Reply Br. in Supp. of its Mot. for Summ. J. at 4). In other words, SMSR contends that the plain language of the lease provides that R/C Theatres must pay a percentage of all taxes assessed against the property once SMSR owes any real estate taxes for any part of the property, even if SMSR's tax liability is substantially abated.

The court finds that SMSR's interpretation of Article 6.2 misses the mark. SMSR repeatedly maintains that the term "Taxes" is defined by the words "any real estate taxes or assessments." (Doc. 31, Pl.'s Br. in Supp. of its Mot. for Summ. J. at 11; Doc. 33, Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. at 6; Doc. 37, Pl.'s Reply Br. in Supp. of its Mot. for Summ. J. at 3-4). Contrary to SMSR's assertions, "Taxes" is an abbreviation for "any real estate taxes or assessments," and the word "Taxes," for the purposes of this lease, is not defined solely by these six words. In fact, the parameters of "Taxes" are subsequently clarified in Article 6.2 as follows:

> "Taxes" shall include such taxes as are general or special,
> ordinary or extraordinary. In addition, real estate taxes shall
> include any tax or imposition on the value of this Lease or upon
> the rents, if the same is imposed in lieu of or in addition to real

estate taxes.  Taxes shall also include Landlord's costs to
conduct any taxes or assessments upon the Demised Premises
or Mixed Use Development, or land upon which the same is
located.

(Lease art. VI, ¶ 2).  Regardless of how the parties indicated that "Taxes"

would serve as an abbreviation for "any real estate taxes or assessments,"

the court finds, as is fully discussed above, that the use of "become payable"

in the first sentence demonstrates the parties' intent that R/C Theatres' pro

rata share consist of payable taxes.

Moreover, SMSR's interpretation of "Taxes" as including all assessed

taxes, whether payable or fully abated, makes little sense in light of the other

provisions of Article 6.2.  For instance, SMSR's approach renders the timing

mechanisms of Article 6.2 meaningless.  Furthermore, we find that the plain

meaning of "reduction" does not include KOZ abatements, despite the fact

that the purpose of the KOZ program is to reduce property owner's real estate

taxes.

Accordingly, the court rejects SMSR's arguments regarding its

interpretation of Article 6.2. The parties developed and agreed upon a formula

so as to apportion the taxes due and owing on the property as a whole as it

relates to the square footage occupied by R/C Theatres.  The parties could

have provided for alternative means of calculating property taxes in the event

that SMSR subdivided the property into condominium units and sought KOZ

abatement extensions for a portion of those subdivisions. The parties,

however, included no such contingencies. Even though SMSR may regret

entering into a lease that predicates one tenant's property tax obligations

upon the real estate taxes assessed and payable on the property as a whole,

the court cannot rescue SMSR from the clear import of Article 6.2. As such,

the court will enter a declaratory judgment in R/C Theatres' favor.[16]

### B. Calculation of R/C Theatres' 2011 Real Estate Tax Liability

As the court explains above, R/C Theatres' pro rata share consists of

66.25% of the real estate taxes assessed against the property and payable by

SMSR. Given this finding, the court will declare that R/C Theatres must pay

SMSR 66.25% of the payable face value of the 2011 revised tax bills issued

by the relevant tax authorities.

For the full 2011 tax year, the revised county and school tax bills for the

property's non-KOZ Parcels contain face values of $42,844.35 and

$126,260.62 respectively. The revised 2011 city tax bill for the non-KOZ

Parcels contains a payable face value of $69,412.23. Thus, SMSR was

---

[16] In granting R/C Theatres declaratory judgment with respect to the interpretation of Article 6.2, the court does not express an opinion as to whether R/C Theatres is liable to SMSR for any payments pursuant to Article 6.1.

assessed and expected to pay local taxing authorities real estate taxes with a total face value of $238,517.20 in 2011.  The court will declare that R/C Theatres must pay SMSR 66.25% of this amount or $158,017.64.

### C.  R/C Theatres' Failure to Remit Payment for the 2011 Taxes

As is discussed above, SMSR argues that the calculation of R/C Theatres' pro rata share includes all assessed taxes, regardless of whether those taxes were subsequently abated.  SMSR alleges that R/C Theatres "breached the terms of Article 6.2 of the Lease by failing to pay South Main its pro rata share of the taxes that were assessed against the Mixed Use Development" by October 1, 2011.  (Doc. 33, Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. at 14).

The court rejects SMSR's argument that R/C Theatres' pro rata share consists of uncollectible taxes.  Thus, the question facing the court is whether R/C Theatres breached the lease by failing to remit the amount of real estate taxes that they actually owed to SMSR (66.25% of $238,517.20) by October 1, 2011.  After careful consideration, the court finds that R/C Theatres did not breach Article 6.2 of the lease.

Article 6.2 provides, in pertinent part, as follows:

Landlord shall furnish Tenant with written notice ("Tax Notice") of the amount of Tenant's share of Taxes promptly after receipt by

> Landlord of the tax bill for each tax year. Payments required
> pursuant to this <u>Section 6.2</u> shall be made within sixty (60) days
> after the receipt of the Tax Notice without interest or penalty . . . .

(Lease art. VI, ¶ 2) (emphasis in original). R/C Theatres' obligation to pay

real estate taxes was never triggered under the lease because SMSR failed to

provided adequate written notice of the amount that R/C Theatres actually

had to pay. Rather than providing notice of what the lease actually required,

SMSR furnished R/C Theatres with written notice of uncollectible tax bills that

SMSR knew were superseded by revised bills.

Moreover, R/C Theatres' obligation to make payment under Article 6.2

was simply never triggered because SMSR repeatedly denied R/C Theatres'

requests for information regarding the 2011 KOZ extensions. SMSR

deliberately withheld information about the real estate taxes that it actually

had to remit to local taxing authorities. If SMSR had provided this information,

then R/C Theatres could have determined the appropriate pro rata share.

R/C Theatres, however, did not possess this information until the

commencement of this litigation, making the timely payment of their pro rata

share impossible.

The court cannot hold R/C Theatres in breach of the lease when SMSR

deliberately prevented R/C Theatres from performing under Article 6.2. <u>See</u>

In re Weedling, 205 F. App'x 955, 959 (3d Cir. 2006) (observing that "a party cannot prevail for nonperformance if she alone is responsible for the nonperformance." (citing Liddle v. Scholze, 768 A.2d 1183, 1185 (Pa. Super. Ct. 2001))); McDermott v. Party City Corp., 11 F. Supp. 2d 612, 621 (E.D. Pa. 1998) (finding that "where a party claiming the condition has not been satisfied is the cause of the non-occurrence, he or she may not claim the non-occurrence to his or her advantage."); Craig Coal Mining Co. v. Romani, 513 A.2d 437, 440 (Pa. Super. Ct. 1986) (A party "may not, in fact, take advantage of an insurmountable obstacle placed, by himself, in the path of the other party's adherence to an agreement.").  Accordingly, the court will grant R/C Theatres summary judgment on this point, deny SMSR summary judgment and hold that R/C Theatres did not breach the lease.

### D.  Attorney's Fees and Costs

Both SMSR and R/C Theatres request an additional award pursuant to Article XXXII of the lease.  SMSR seeks payment for its reasonable costs, attorneys' fees, expenses, interest for the 2011 real estate taxes R/C Theatres must pay and a late charge.  R/C Theatres seeks payment for their reasonable costs, attorneys' fees and expenses.  For the following reasons, the court will grant R/C Theatres' request and deny that of SMSR.

Article XXXII of the lease addresses enforcement costs, the applicable interest rates and late fees.  This article provides in relevant part as follows:

> 32.1    In the event any action is instituted by a party to enforce any of the terms and provisions contained herein, the prevailing party in such action shall be entitled to its reasonable attorneys' fees, costs, and expenses.

> 32.2.    Where this Lease provides for the payment of interest, such interest shall be the lesser of eight percent (8%) per annum or the highest lawful rate permissible under the laws of the State in which the Demised Premises are located.  Such interest shall accrue from the date payment becomes due and payable under the terms of this Lease, until paid.

> 32.3    In the event any . . . sum [owed] under this Lease shall not be paid within ten (10) days following the original due date thereof, a "Late Charge" of three (3) cents per each dollar so overdue shall be paid . . . .

(Lease art. XXXII, ¶¶ 1-3).

As the court explained above, R/C Theatres did not breach the lease by failing to remit to SMSR a 2011 real estate tax payment by October 1, 2011.  Accordingly, the interest and late charge provisions of Article XXXII are not applicable as no real estate tax payments were due on October 1, 2011.

With respect to the first paragraph of Article XXXII, the court finds that R/C Theatres is the prevailing party and is entitled to reasonable costs, attorneys' fees and expenses.  Under Pennsylvania law, the prevailing party is the party who obtained the relief sought in an action.  See Eastern Elec. Corp.

of N.J. v. Shoemaker Constr. Co., 657 F. Supp. 2d 545, 561-62 (E.D. Pa. 2009) ("Pennsylvania courts have described a substantially prevailing party as 'a party in whose favor a judgment is rendered, regardless of the amount of damages awarded.'" (quoting Zavatchen v. RHF Holdings, Inc., 907 A.2d 607, 610 (Pa. Super. Ct. 2006))).

Even though the court will declare that R/C Theatres must pay SMSR $158,017.64, this is the amount that R/C Theatres acknowledges that they owe.  In all other respects the court is granting summary judgment in R/C Theatres' favor.  As such, R/C Theatres is the prevailing party and the court will grant them fourteen days to submit evidence of their reasonable costs, attorneys' fees and expenses.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SOUTH MAIN STREET** | : | **No. 3:12cv24** |
| **REDEVELOPMENT, LLC,** | : | |
| **Plaintiff** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **R/C THEATRES MANAGEMENT LLLP** | : | |
| **and R/C THEATRES MANAGEMENT** | : | |
| **CORPORATION,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 13th day of March 2013, it is hereby **ORDERED** as follows:

1) Plaintiff South Main Street Redevelopment, LLC's motion for summary judgment (Doc. 27) is **DENIED**;

2) Defendants R/C Theatres Management LLLP and R/C Theatres Management Corporation's motion for summary judgment (Doc. 20) is **GRANTED**;

3) The Clerk of Court is directed to enter judgment in favor of Defendants R/C Theatres Management LLLP and R/C Theatres Management Corporation pursuant to 28 U.S.C. § 2201, and it is **DECLARED**: (A) Article 6.2 of the lease requires the Tenant to remit payment of a pro rata share of the amount of real estate taxes that the Landlord is actually required to pay to the taxing authorities; (B) Defendants R/C Theatres Management LLLP and R/C Theatres Management Corporation's pro rata share of real estate taxes for the 2011 tax year is limited to $158,017.64; and (C) Defendants R/C Theatres Management LLLP and R/C Theatres Management Corporation is not in breach of Article 6.2 of the lease, and any

34

obligation under the lease to remit a pro rata share of real estate taxes assessed against the property for the 2011 tax year has yet to be triggered;

4) Defendants R/C Theatres Management LLLP and R/C Theatres Management Corporation's request for reasonable costs, attorneys' fees and expenses pursuant to Article XXXII of the lease is **GRANTED**. Defendants shall have fourteen (14) days from the date of this order to submit their litigation costs, expenses and an itemized list of attorneys' fees.  Plaintiff shall then have fourteen (14) days from the date of Defendants' filing to lodge objections; and

5) The Clerk of Court is directed to **CLOSE** this case.


**BY THE COURT:**


 **s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**